Are you here for the appellant? That will be me, Danielle Hewer, for Appellant Rodney Koon. Okay, we're pleased to hear from you. Good morning, Your Honors. Good morning, Your Honors, and may it please the Court. The only question before this Court is whether there's at least a genuine dispute of material fact on Rodney Koon's ADA and RA claims such that they should have survived summary judgment. The answer is a simple yes. In fact, Mr. Koon brings quintessential reasonable accommodation claims sitting at the very heart of the ADA and RA. Mr. Koon has a severe mobility impairment, walks with a cane, and has a medical no-climbing restriction, so he couldn't safely climb the two flights of stairs to the prison library. He didn't ask for much, just a pass that would allow him into the already operational handicapped library, so that he could access library services with safety and dignity, notwithstanding his disability. But he was denied even that basic accommodation over and over again by decision-makers who didn't so much as consult him or muster the effort to check whether he had any restrictions, which, of course, he did. These facts undeniably lay the foundation for claims under the ADA and RA, and they also present a clear picture of deliberate indifference, an issue that the District Court did not even reach because it remarkably dispensed of his claims on an erroneous reading of the basic elements of these statutes alone. The District Court's key errors were twofold. First, the District Court overlooked the reasonable accommodation right altogether, instead viewing these statutes as far narrower prohibitions on animus-laden conduct. And second, the District Court blurred the lines between a non-cognizable medical malpractice claim, on the one hand, and on the other, a cognizable reasonable accommodation claim that incidentally touches on the decisions of medical professionals. This Court should reverse the faulty decision below, reinstate Mr. Kuhn's ADA and RA claims, and remand for further proceedings. The District Court took its first wrong turn in the very framing of Mr. Kuhn's claims. Mr. Kuhn brings a classic reasonable accommodation claim, but the Court overlooked that right altogether. Just as important as the negative obligation not to engage in overt discrimination is the affirmative duty on public entities to provide disabled individuals with reasonable accommodations so that they can enjoy public programs and services, just like their able-bodied peers. Why do you think the accommodation was denied here? Your Honor, the accommodation was denied here because Mr. Kuhn submitted repeated sick call requests to receive a handicap pass, and defendant Browning denied that handicap pass request. Mr. Kuhn then submitted an administrative grievance, and it was denied at step one, it was denied at step two. This is a misunderstanding over the question of whether this is a renewal or not? Your Honor, we do not believe that this boils down to whether there was some sort of misunderstanding about whether this was a removal request. First, it's important to point out that during- I thought that was the reason that she didn't give that because she thought it was a request for a renewal when it actually was not. Ms. Browning does state in her declaration that that is how she understood the request. However, we'll note that each of the three sick call requests that Mr. Kuhn made, which do appear in the record, request a handicap pass outright as opposed to a renewal. In addition, there is a dispute within- within defendant's own evidence in that during the grievance process, defendant Wells, as well as the other- as well as the other agents of NCDPS, stated that the reasonable- that the handicap pass, the accommodation being requested here, was denied because it was not medically necessary. Well, let's- let's, you know, take your view that it was a mistake here. What I- the difficulty I'm having is whether this rises to the level of deliberate indifference. Whereas, I mean, normally there has to be a- with the deliberate indifference standard, you have an objective standard, you have a subjective standard. And the objective standard is that of a serious medical need. And then the subjective standard requires a mentally culpable state of mind. And then I suppose that the delay or in getting the pass, because he did eventually get the pass after six months or so, has to result in some kind of serious injury. And I'm wondering whether any injury that occurred was as a result of the prison authorities or whether it was a result of the injury, but it was the result of a an automobile accident in which he was driving with a cocaine high and was in a crash that killed two parents and a young child. And to the degree that there's an injury, I'm not sure why the injury was a result of any kind of action on the part of the prison authorities as opposed to a pre-existing injury, a pre-existing problem. There may have been a mix-up here. I'm just- the only question I have is whether on this record it rises to the level of deliberate indifference. Which is, you know, maybe there's a higher standard than that for abrogation of sovereign immunity. The courts are split over that question. But let's take your view that it's deliberate indifference. I just don't know how the facts here rise to that level. Your Honor, I'll briefly clear up the last part of your question, which was concerning Mr. Kuhn's injury. He did, in fact, suffer a meniscal tear subsequent to his efforts to access the library services, notwithstanding his disability. It's in the record that he had to hop up the stairs one at a time in contravention of his direct no-climbing restriction that the prison system itself recognized in order to access that library. And in doing so, he did incur additional injuries. Of course, exacerbation of an injury that's pre-existing does still constitute an injury. And within the context of the ADA and the RA, almost everyone who's covered by these statutes is going to have some sort of pre-existing impairment. But to touch on your overarching question, I would respectfully submit that the deliberate indifference standard is, in fact, different here. What Your Honor was reciting is the deliberate indifference standard that applies for an Eighth Amendment claim, which, of course, is tied to the Eighth Amendment's guarantee against cruel and unusual punishment. And because of that, the deliberate indifference standard for an Eighth Amendment claim is tied to the serious medical needs of the prisoner and so forth. Here, the deliberate indifference standard is a general matter. The first step is- Well, the deliberate indifference standard is one that has been adopted for ADA claims as well, hasn't it? I mean, you yourself began your argument by saying this is a- The question here is whether there was deliberate indifference. Yes, Your Honor. And what I'm wondering is, why does the deliberate indifference standard change from one context to another? Why you say, well, deliberate indifference means one thing in the context of the Eighth Amendment and another in the context of the ADA. And I'm not- You know, it's the same language. It's the same term. I'm not sure why it would change. Your Honor, the two steps of the deliberate indifference inquiry are, one, that there's knowledge that harm to a federally protected right is substantially likely, and two, the failure to act upon that likelihood. That first step, harm to a federally protected right, is what is malleable depending on the underlying inquiry. Here, the federally protected right at issue is the reasonable accommodation claim- is the reasonable accommodation right, apologies, under the ADA and the RA. Why is that any more important than an Eighth Amendment right? It is not, Your Honor. Mr. Kuhn- You seem to suggest that it was. No, Mr. Kuhn brought two claims below. We have only appealed the summary judgment determination on one of them. Below, he brought a 1983 claim that inherently wrapped in the Eighth Amendment and its prohibition on cruel and unusual punishment. Deliberate indifference with respect to that distinct claim would import the standard that Your Honor has described concerning the serious medical need of the prisoner and so forth. That claim is not before the court today. I'm wondering, you know, are we going to have a hierarchy of deliberate indifference sort of tests of prisons? There is not a hierarchy of deliberate indifference tests. Rather, the deliberate indifference test is specific to the underlying right being asserted. Here, Mr. Kuhn asserts that there was deliberate indifference with respect to his reasonable accommodation right under the ADA and RA. And it is that right that is fundamentally at issue here. There's not so much a hierarchy as... Just for clarification, when we're talking reasonable accommodation, typically a discriminatory animus is not necessary. But in the context here, you're asking for compensatory damages. And so that imports the deliberate indifference standard. If I'm understanding the Eighth Amendment standard, which I suppose you could have brought an Eighth Amendment claim to here for the injury here that you allege. But I understand the harm is somewhat different under the Eighth Amendment because it has to be substantial. Whereas in this instance, everybody's kind of already agreed that the knowledge of the harm as a federally protected right is substantially likely and that the failure to act is a likelihood, is the basis for it. So when we're looking here, we look more to the actual facts to determine if there was a deliberate indifference. And this, again, is for the purpose of the compensatory damages. Because I think if all you want is just a reasonable accommodation, I don't know if you need to show that, you know, reasonable accommodation. You show there are certain factors you show that wheelchair ramp or whatever has to be built. You're not looking for compensatory damages, but your client is looking for compensatory damages. And that's a whole different question as to what in the world would that be. And you asked for $200,000, but I just don't know what that would be in a prison context. And that may well be a short answer to all of this, as to what in the world does he want, you know, in a prison context. You can win a case and ultimately at the end of the day, you wonder, well, what are you going to do? And maybe there is that pie in the sky that you can get some huge damages here, but I don't know. But I think in terms of the different standards, Judge Wilkerson's question goes to, is it different from the Eighth Amendment? Is it different from other things? Why is it different in this context? And maybe I'm not getting clear on your answer on that. Thank you, Your Honor. Yes, there are a few different ideas at play in your question. First, I will note, of course, before this court is not the question of ultimately what level of damages Mr. Coon would receive or even whether he would ultimately prevail before the finder of fact. The question really is only whether Mr. Coon should be entitled to the opportunity to present his claim before the fact finder, given that it was prematurely tossed out by the district court. Do we have an abrogation of the state's sovereign immunity here? It's brought against North Carolina. Yes, Your Honor. There is abrogation of the state's sovereign immunity. The sovereign immunity inquiry is twofold here. The easiest question for this court is whether the state has waived sovereign immunity under the RA by its acceptance of federal funds. And every state, including North Carolina, accepts federal funds for its prison. In fact, defendants only- But then you wouldn't, if you want to go that rate, I'm not sure that you raised it, but wouldn't you have a Pennhurst problem in terms of whether the state was on notice that accepting federal funds made it liable for claims of this order of magnitude? What I'm concerned about is are damaged claims because somebody was assigned to the wrong dining hall or somebody was given the wrong diet or somebody was put in the wrong cell. And just as a Pennhurst matter, it seems to me that states are being hit with a lot of suits that they didn't receive notice of in accepting federal funds. And then when one goes over to the ADA, I'm wondering whether if the ADA covers every small decision adverse to an inmate, I'm wondering whether that makes the state liable for compensatory damages for a multitude of small decisions, whether that really is congruent and proportional. Section 5 of the 14th Amendment requires congruence and proportionality in order for state sovereign immunity to be abrogated. And I wonder if you take the claims and bring them down to this very small, minute level and say, oh, well, that abrogates state sovereign immunity, then I'm wondering how that's congruent and proportional. To start with your question of the Rehabilitation Act, this court has held that the acceptance of federal funds in... Did you ever raise that before district court? Yes, your honor. Mr. Kuhn did raise sovereign immunity under the waiver of the sovereign immunity under the Rehabilitation Act below. I am looking at district court docket number 61 at page 9. And there, Mr. Kuhn does say that defendant's action waived the 11th Amendment immunity, including under section 504 by its receipt of federal funds. And he, in so doing, does cite an appropriate authority. Therefore, of course, Mr. Kuhn was proceeding pro se below. So he is entitled to a somewhat broader... So by accepting federal funds, the state is agreeing to supervision at this minute level or the state has been on notice that it was putting itself in for all of that? Yes, the state is on notice. And it's well established in this court that a state waives sovereign immunity under the RA by its acceptance of federal funds. This was made unambiguously clear in the 2005 Constantine case, which, of course, is well before any of the violations Mr. Kuhn alleges here. And we would respectfully submit that that is firmly rooted in this circuit's precedent. To turn to your Honor's second question with respect to sovereign... I'm going to... You've got some rebuttal time. Yes, your Honor. I'm going to ask if any of my co-panelists have questions for you at this point. No. Judge Richardson. All right. Thank you. Mr. Williams, if you unmute yourself, we'll hear from you. Thank you, your Honor, and good morning. May it please the court. My name is Alex Williams, and I'm representing the defendants in this case. This case is very simple, and it can be resolved without having to ever get to the issues of sovereign immunity. As your Honor touched on, this is a case that involves where the plaintiff is requesting money damages. Let me ask you about the sovereign immunity in terms of how it's postured before us. Did the district court actually rule on that? Did it delve into it to any great degree? No, your Honor, it did not. Even if it went there, it would be something that would probably be appropriate if we're going to deal with 11th Amendment type questions, send it back for the district court to flesh it out. But insofar as the sovereign immunity, the other question I have is, I know you brought up it with regard to the ADA in your brief, but you don't seem to even mention sovereign immunity for the Rehabilitation Act. So doesn't it appear to me you waived the sovereign immunity for the Rehabilitation Act. Is that, was that what you intended or it looks like what you did? Because I don't see it in your brief unless you can show it to me. No, your Honor, there are a couple different things regarding that. Number one, I would say that I still don't believe that Plaintiff ever asserted a Rehabilitation Act claim. It's nowhere mentioned in his complaint. He never mentions Rehabilitation Act. He never mentions RA. He never mentioned Section 504. He doesn't do any of that. And while I understand that the courts are liberally construe pro se complaint, we have a very unique situation here where Plaintiff filed a complaint, the court- The problem is the district court actually construed this complaint to allege a rehabilitation claim. And I'm just asking in terms of your brief here, you know, I fundamentally believe if we delve into the sovereign immunity, it's probably something the district court should, you know, flesh out first if we go there. And you started out saying we didn't need to do that. So I'll just let you proceed in the manner you were going. One question to follow up on what Judge Venn said. You suggested that the most direct way to this without maybe the need for a remand or for wrestling with these ten-hurst and proportionality questions and congruence questions is to say, look, this doesn't- it's conceded that the standard is deliberate indifference. And that's not met on these facts as alleged. And then your opposing counsel says, well, that's an issue of prival fact. And your view is, no, the grant of summary judgment was perfectly fine on this record. Now, what if you would expound on that a little bit? Because that's what I'm- I find what you say appealing. I don't- the questions involving- the ten-hurst questions involving the Rehabilitation Act claim and the congruence and proportionality claim questions surrounding the abrogation of sovereign immunity claim are quite intricate and difficult. But you're saying we don't have to reach that because everyone agrees that deliberate indifference is a permissible standard. It might even be higher than that. Some- some- some courts have suggested that. But I wonder if you could respond to what your opposing counsel said. Yes, Your Honor. And I think Your Honor is correct. We don't need to get to those other issues that are much more intricate. But we can just rule on whether plaintiff has satisfied his obligation to obtain monetary damages. And when we start talking about this, the first case that really hit on it was a U.S. court case that was Guardians Association versus Civil Service Commission of New York City. And they- they actually required- and I know that case has dissents and concurring opinions, and it's a little bit of a mess. But that case actually stated that it would require a discriminatory intent. And since then, other courts have tried to determine, OK, what did the Supreme Court mean by that? A lot of courts have settled on the deliberate indifference standard. Plaintiff's themes to- Well, that's- that's- that's another thing. If- if we were to be thrust into the middle of a debate about whether the deliberate indifference standard is the controlling standard or whether the discriminatory intent standard does a huge circuit split on that question. And, you know, I'm just- I mean, all these things are working in the background. The- the Penhurst question, the congruence and proportionality question, the question of whether deliberate indifference or intentional discrimination is the- is the standard. But everybody has said it is at least a standard of deliberate indifference. That's correct, Your Honor. And I think that even if you say it's at least deliberate indifference, our courts have routinely said that is a lofty bar for a plaintiff to meet. Our courts have said that they have interpreted that very highly, and they have required that there be actual notice that their actions will harm the plaintiff. And they have also- I think I agree with Judge Wilkerson in the way he's postulated this case, that, you know, there are a lot of complex issues here on sovereign immunity, and there's some splits, but we all agree on deliberate indifference. And I think so we get into the question of this is a summary judgment. Is there a triable fact that's presented? And what seems to present a question here to me, and it is I articulate to me, how is it that the government was not aware of the problem here? I mean, he alerted the Department of Public Safety about his status, and the no-climbing restriction, his need for accommodation. He mentioned these issues to his sick call requests, and to prison officials directly, and during the informal grievance process, and then they had medical records on him, and his ADA designation. And I'm not saying that's the only evidence there, but I'm dealing with the triable fact issue on it. And so why is that not at least sufficient enough to create a triable fact? You may well could win beyond that, but at least in terms of where we are, the procedural place where we are, why is it not a triable fact, enough to create triable facts for the court to move forward on? Your Honor, what I would say is that when you look at these deliberate indifference standards and these cases that interpret it, when you see that there was an evaluation, and you see that there is the officials are responding to the individual, they will say that that is not deliberate indifference. They are trying to answer the defendant. They're trying to work, I'm sorry, plaintiff. They're trying to work with the plaintiff. They're trying to work with him and respond to his concern. That's what happened to you. Yes, he did submit a call request. I think your interpretation and where you're going is a reasonable way of going it, but I read through this and it looks like to me there's another side of this question. I mean, they never did really medically evaluate him and Browning never did. And there's a question, was her evaluation a medical one or was it based on the fact of not being a renewal of it? And I'm just saying it just looks to me like there's some questions here. I'm not saying which way it goes. But we're in summary judgment and summary judgment means summary judgment in light most favorable to the non-moving party, not in a light most favorable to the prison side or to the way the court feels like it should be. And so when you get to that, the question is summary judgment. That's all I'm going on. I'm not trying to make a judgment one way or the other which way it goes. I accept every point you make. The points on the other side is what I want you to address to let me know why that does not create a trouble. Well, Mr. Williams, let me just say one thing that before we go into sending this case to trial, we would have to, on deliberate indifference, we have we would have to answer the threshold questions of whether there's been an abrogation of sovereign immunity and of whether this passes muster under whether the state has a Pennhurst claim. We can't just send this to trial without asking the threshold question which sovereign immunity is of whether there is an abrogation. I don't, I mean, I would think that sending it to trial assumed that, yes, we put the state to trial. We would have to assume that there's been an abrogation of sovereign immunity and that the state is liable for these kind of claims of multitudinous claims, detailed claims of prison administration, and it was provided notice under Pennhurst of that. And those are preliminary questions. Those are threshold questions. If we hold that this is a tribal, an issue of tribal fact, under a deliberate indifference standard. Judge Williamson, you and I agree. You and I agree on what you just said. And I, one reason I posed those questions that way was because we put it in a position that even without getting to that, it could be resolved. And so I agree. If we do find it is a tribal fact, those are threshold issues that have to be decided. But I also think that the government didn't even address two of those three city of born factors there, that's even there, on this whole sovereign immunity question. And most sovereign immunity questions, when you go and deal with 11 men, then you at least let the trial court flesh out the facts of what's going on here. So if we do it, then everything's pointing to a remand on that. But I don't disagree with you, Judge Wilkinson. I want to make that clear. I don't want to look like you and I were in conflict in terms of how we're looking at it. I only jumped there because of the way it was postulated at the beginning here that, you know, ultimately it can be decided on. And I'm saying no, you know, I think that was a tribal fact. So that's why I wanted to put it in that posture with you. Let me just say to my good friend in response that I would agree with you on the issue of tribal fact if the standard here was negligence. But the point the Supreme Court makes over and over and over again is that deliberate indifference is a pretty high bar. You have to have an objectively serious injury and you have to have a subjectively culpable intent and you have to have the causation in the sense that delay caused the injury and all of that. And they say this is a very high bar. It is not just a negligence standard. If it weren't just a negligence standard, I think your view would be compelling. But the standard of review here, I mean, the standard of culpability in light of all the Supreme Court has said, you know, Justice Marshall wrote a seminal opinion in the Estelle v. Gamble case. And if you want some strong language about the fact that deliberate indifference cases are supposed to be the rare exception and not the general rule, the Estelle v. Gamble case sets it out with unmistakable clarity. That's where we have a difference. I'm not saying the prison administration was perfect here. I'm just saying human beings make mistakes and there are misunderstandings. But that's me. It all comes down to the difference between deliberate indifference and negligence, which I think the court has stressed time and time again. That's where it goes. I want to again agree with you, Judge Wilkerson, because we now bounce from the Threshold issue back to the indifference. I'm OK with that. And so now to address whether there's a tribal issue of fact, I do point to the fact that the parties have agreed what it is. I mean, there are a lot of other factors we might want, but parties have agreed what deliberate indifference is. One, that it exists if the government first has knowledge that a harm to a federally protected right is substantially likely. And two, that it fails to act upon that likelihood. That's the agreement of the parties here. And, you know, of course, we determine the law and everything. That's the whole question. But then it gets to the question of what is a tribal fact. And I laid out those facts to counsel saying, OK, I accept everything you say. That sounds real good and the like most favorable to you. But this is a summary judgment and the like most favorable to the defendant here or to the complaining party, the plaintiff. And when you look at those facts, does it create a tribal fact? That's my question. But I agree with the posture you put it in, Judge Wilkerson. First, if we deal with it before you send it back, yeah, you ought to send it back and say there's some threshold issues to deal with. But if we move away from that and get to the actual issue here that they all say is deliberate indifference, could be a difference of opinion, should it be more of whatever. But if we're going to say that we agree, then we look at what they say it takes to exist. Then do those facts create tribal issues of fact? Maybe that's maybe too simplistic in the way I've looked at it. But maybe you can help make it a little bit more complicated from the counsel side. Mr. Williams, I think you should be back in the action. We kind of, Judge Wynn and I had a nice discussion, but I'm afraid. We agree. We agree with most parts. At least the posture of the case, so that's the good news. I want to, I love my discussions with Judge Wynn, but I feel like, and I think it's all my fault, and I feel like I've cut you out of the action. So, please proceed. Well, Your Honors, I think you both hit the nail on the head, and that is that this case doesn't have to deal with all those other issues if you find that plaintiff did not satisfy a deliberate indifference standard. And, Judge Wynn, to answer your question about how plaintiff did not meet that standard. Plaintiff did not meet that standard because, in this case, the defendants did respond to plaintiff's concerns. Now, they might have made mistakes in responding to plaintiff's concerns, but they weren't just deliberately indifferent to his concerns. They did respond to his concerns. So, in this case, when you look at it, you see that Browning, she did get these sick call requests, and she did respond to them. She did look at his medical records. Now, did she overlook some things? Yes. Did she make mistakes? Yes. We can't change that. But that is, at best, negligence. It does not rise to the lofty level of deliberate indifference. And he did, in fact, receive the firm. On multiple occasions, they denied him his rights, and that caused him some harm. I mean, he's, you know, he's pretty severely injured. I will concede to anyone that facts of how he became injured are just egregious and tragic, just terrible. But he's an injured person. And to go up those flights of stairs, I mean, it's very graphic in terms of what's going on here. So, they denied him those rights, and I mean, it's not like they kept responding and said, we're doing the best we can. And I'm not saying they didn't respond. I'm just saying there's evidence on the other side of a tribal issue of fact. But I think the evidence on the other side does not rise to the level of deliberate indifference. At best, it rises to the level of negligence. He got the permit. Yes. And so now the question is, go ahead. He was able to go to a library. He had to climb some stairs. But the point is, you know, human beings, prison officials, anybody, we're not perfect. We all make mistakes. But I would hate to think that every mistake I have made, and there have been plenty of them, they're not mistakes of the heart. They're not deliberate indifference to somebody. I just made a mistake. And that's where the law of negligence comes in. Is that, you know, negligence is supposed to cover snafus and mistakes and misunderstandings and that kind of thing. But if I were going to be accused of deliberate indifference for every mistake I've made, I would be in litigation from now until the 22nd century. That's all I'm saying. Yes, Your Honor. In the context of answering that question, I agree with Judge Fulkerson. I think it is a higher standard of negligence, but it certainly is an intentional conduct. And this was seven months. This wasn't a couple of weeks. Seven months. And he is dealing with severe pain. He may be torn his meniscus, trying to go up and down those stairs. I'm just saying there's an issue of fact. And may not be, I don't know what you've got to get to deliberate indifference, but if you don't, he doesn't have a choice. You do realize that, don't you? He's in a prison. And there's nothing he can do. So if anything, you would think in that context, the government has a greater, because everything is controlled with them there. And seven months, and every time, and he's making every effort to try to get it. He's asking for it over and over. He's been declaring it over and over. And he's been denied, denied, denied, denied. And I'm not saying it should go one way or the other. I keep saying tribal issue of fact. It's not so clear cut to me that this is some, well, they just kind of did the best they could. And they were helping him and responded to him every chance. And then ultimately they gave it to him seven months later. That's a long time. For someone in a severely disabled situation to try to have reasonable accommodation rights afforded to him. Your good. I know my time's about to expire. But if I could dovetail off that for 2.0, we gave your opponent some extra time. Go ahead. Thank you, Your Honor. The one thing I would say about that is I heard you say that he kept trying and trying and trying everything. Good. After he filed his grievance and after the step one response, he was told the way to go about this. That was to submit this. I are a R4. He never did that. That was something that he never did. So I did want to make sure the court was clear about that. The other thing that I will say is I heard your honor say this was seven months. And what we have here is, again, it's just a play. This was not an outright denial. He did get his. And so the cases that I cited in a little bit shorter of the delay and they stood proposition that the delay is not a violation of the EA. So after plaintiff's counsel responded back that these were short delays, I started researching, well, are there cases with longer delay? And I was able to find two of them. One of them is and it's not a direct prison contact, but it is another A.D.A. case where an individual is denied an accommodation for a sit to stand death and was denied that for 10 to 13 months, depending on what happened, you believe. And in that South Carolina case, court said that's not enough of it. That's not enough. It's not an outright denial. It's just a delay. It's a reasonable delay. And they cited to a 7th Circuit opinion from 2000 that have a 20 month delay of a job. But not only is there a subjective component to these delivered in different frames, it has to be a mentally culpable state. But there's an objective component. And that is there has to be a serious medical need. And the delay such as it is has to result in the serious medical need. When the question of whether it's a serious medical need, but at any rate, whatever it was, was created not by the prison authority, but it was created by this terrible accident when someone on a cocaine binge runs into a young couple and their child and kills all three of them. And you say, well, that's not relevant. But it is relevant because that's the genesis of the injury. That's the problem. Not the negligence of officials. But at any rate, I'm going to say if Judge Wynn or Judge Richardson has further questions, we can do that. Otherwise, we'll let anybody have any further questions or can we just go to Ms. Cure. Counsel, you have some rebuttal time. We'd like to hear from you in rebuttal. Thank you, Mr. Williams. Thank you, Your Honors. Go ahead. Thank you, Your Honors. I'd like to begin where this court has been focusing, which is with deliberate indifference. First, I would like to reiterate that the standard is distinct for a violation of the Eighth Amendment as was brought with Mr. Kuhn's 1983 claim that, again, is not before this court on appeal and a violation of the ADA and the RA, which are fundamentally different statutes. If you would focus on what we've just discussed, and as I understand it, while I do agree with Judge Wilkerson about the tragic nature of how he got injured, I don't think it's relevant how he got injured. It's just that he is injured. He's just disabled like anybody else. It doesn't matter how he got disabled. He's just disabled. But if we want to import those things in, that's personal feelings, and I got that. But the question here is we, as your co-counsel, we've seen the cabinets to a question of whether there is a tribal issue of fact on the question of deliberate indifference. Your co-counsel has articulated that there was response, you heard him, a response that this was not an act in which they did anything that was unduly delayed, and on and on. So from that perspective, what do you say, in the light most favorable here, because that's the summary judgment standard we're dealing with to determine whether there's a tribal issue, are those facts that would create a tribal issue of fact on the question of deliberate indifference? On the first element of deliberate indifference, knowledge that harm to a federally protected right is substantially likely. Mr. Kuhn repeatedly alerted the prison to his need for an accommodation. He submitted three sick call requests to obtain a handicap pass, and he filed a grievance, again, seeking a pass when his request was denied. He could scarcely have been clear about his need for an accommodation and, in fact, the risks to his federally protected rights themselves. In his first sick call request, which is at JA45, oh, sorry, apologies. In his sick call request, he identified himself as an ADA inmate, stated that he, quote, had to use a cane for a walking aid. Let me ask you this, counsel. How far does this extend? Because you can make a request and a great many inmates consider themselves ADA inmates. But you can make a great many requests and say, I didn't get the prison cell I wanted, and that exacerbated a bronchial condition I have. Or I didn't get assigned to the dining hall I wanted. Or I didn't get the food I wanted. And I'm an ADA inmate. And my request was denied. And a lot of those requests are denied. And a lot of those requests are repeatedly denied. Because in the final analysis, to say that every request from an ADA inmate has to be a repeated request, of which there are many, has to be granted or you're going to be on the hot spot for deliberate indifference. That not only waters down the deliberate indifference standard, but it brings into play a host of pin hearse and sovereign immunity abrogation questions and proportionality and congruence questions to let this case go forward. It may seem like just a small matter, but allowing it to go forward would have large consequences, including just sort of skating over the surface of really very difficult questions of sovereign immunity abrogation and the like. That's the problem. Your Honor, I see that my time has expired. May I respond to your question? Oh, sure. Thank you. Our position certainly is not that any request or any series of repeated requests categorically needs to be granted in order to avoid a finding of deliberate indifference. Here, the critical facts are that Ms. Browning received this request. She did not so much as check to see whether Mr. Kuhn had any limitations. Mr. Kuhn was an ADA inmate classified by the prison system itself. NCDPS's own records said that he had a no-climbing restriction, which is antithetical to having to climb steps to get to the regular library, and that unto itself meant that he needed access to the handicapped library. She's under misapprehension as to whether this is a renewable question or whether this is a renewal question or whether this is ab initio or what have you. That's the thing. I mean, human beings are simply not infallible. They just aren't. That's why we have the doctrine of negligence. We don't let them off the hook. But at the same time, before we apply one of these higher standards, we realize that there's really a difference. At any rate, we've been over this ground. I'll follow up, Judge, with just two sort of, I hope, very narrow questions. May I ask for permission to have her to answer my question? She never really did get to my question initially. But if Judge Richardson won't do so, then she can answer my question. It's fine. But I asked the question, and I never got an answer to it. But go ahead. You go ahead. Either way is fine. I just had two questions. I don't care when they get answered. It doesn't matter to me. I'm the same way. We've got plenty of time on it. But I would like to have the answer articulated on the record because it is one that I think is focal to the question. I mean, we can talk sovereign immunity. We can talk tribal issues. We can go into other facts. But we have kept in this thing to talk about deliberate indifference. And in my mind, that's sovereign immunity and summary judgment. And the question is whether it is a tribal fact. And I asked the question, what are those tribal facts? From her perspective, I heard it from Mr. Williams, and I think he articulated his side very well, his facts. And I simply want to hear the facts on the other side in trying to make a decision as to whether there's a tribal issue of fact for purposes of summary judgment. The other issues, they do exist. And I've agreed with Judge Wilkerson, they do exist. But I'm at that point. That's the world we're in right now with that question. Would you mind answering that question, completing your answer on that question? Thank you, Your Honor. There was ample information at NCDPS's disposal that reinforced Mr. Kuhn's need for reasonable accommodation. Of course, as we've mentioned, Ms. Browning did not so much as look into the database that's accessible within the prison that lists inmates' limitations. Mr. Kuhn had a no-climbing restriction in the prison's records that Ms. Browning concedes she did not know about at the time, and therefore did not even try to inquire into. She conducted only an exceedingly minimal evaluation of Mr. Kuhn's medical needs. And this is a man who she says she's familiar with, who walks around the prison with a cane, and who is an ADA-designated inmate and has repeatedly explained his need for a handicap pass. And yet there was hardly a perfunctory inquiry into Mr. Kuhn's serious limitations and the needs that made his request for a handicap pass beyond reasonable and appropriate under the situation. Then in turn, Mr. Wells, in his review of Mr. Kuhn's grievance, he specifically said this library is located up two flights of stairs. He said he was being kept from enjoying the same privileges as other regular population inmates. He recounted his unsuccessful efforts to obtain a handicap pass, and he specifically cited his limitations and ADA status. And yet Mr. Wells did, it seems, nothing except for rubber stamp Ms. Browning's determination. He considered Ms. Browning's determination to be one that the accommodation was not medically necessary, when that is in fact contrary to Ms. Browning's own narrative and suggests that he did not conduct even the barest of inquiries into Mr. Kuhn's needs. And the case law is clear, particularly from the other circuits that can help guide us in this deliberate inquiry. Since we've gotten to case law, is that, have we gotten enough there, Judge Wynn? I assume the case law is not what you're looking for. Please proceed, Judge Richardson, with your questions. Thank you very much for your answer. So you reference here and in a number of other places that the prison's own records indicated that he had, that he could have no climbing. Other places you refer to as a climbing restriction. Can you point to me in the JA where that evidence is in the record? Because when I looked, and I concede I'm not, I don't have a categorical background, but that seems to be denied at least at some level at JA 159. And I'm not sure where that is in the record. Yes, Your Honor. If you would look at JA 43, that is the evaluation that was performed of Mr. Kuhn in response to his initial request to be designated as an ADA inmate. You'll see in Section B substantial limits in one or more major life activities, a checkmark next to the word climbing, and then the word none thereafter. And he was at this point designated by the prison itself to be an ADA appropriate inmate who has, quote, considerable severity of limitation. And I believe... So that's the, I'm following it. So then the follow up that is, is there record evidence, I just want to make sure I understand the record, right? So is there record evidence as to why he either did not request or was not granted a handicap pass initially? This is related to the renew point. Do we have information that he requested and was denied or what the reason he did not have a handicap pass initially was? Mr. Kuhn did not have a history of handicap pass at his prior institution. Mr. Kuhn was not always at Pender Correctional Institution, which is an institution that has a general population library located up two flights of stairs and therefore was inaccessible to someone with limitations such as his. He previously was housed at Lanesboro Correctional Institution. And in that institution, all of the facilities were located at ground level. And therefore, Mr. Kuhn did not need to seek a handicap pass in order to have access to the library. So that last point is what I'm looking for in the record, that Lanesboro, that there was no, there were no handicap passes or he was not entitled to one because everything was on the first floor. So he, he did not, he did not, to be clear, he did not seek a handicap pass because it was not necessary under the circumstances. And that is at JA 88, where Mr. Kuhn... That's all I need. I don't need, read it to me. I'm literally just asking for the JA sites. I'm not... Yeah. I can read them. Thank you. Any further questions, Judge Wynn? Do you have any further questions? No, Judge Wilkinson, thank you. Judge Richardson, do you have further questions? No, thank you. Okay. All right. We thank you very much and we will... Your Honor, may I respond to Judge Richardson's questions about the JA? Only if Judge Richardson wants you to respond. I don't need, I don't need those responses. Thank you very much, Judge. Okay, no, you may not because Judge Richardson has not asked for your response. All right. We will adjourn court until this afternoon. And we want to thank you both for your arguments. We appreciate them very much. Thank you, Judge. Thank you. This Honorable Court stands adjourned until this afternoon. Dodged the United States and this Honorable Court.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Julius N. Richardson